UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAWN BRINSTON | CIVIL ACTION |
| VERSUS | NO. 19-2189 |
| WALMART, INC., ET AL. | SECTION A(5) |

## ORDER AND REASONS

Before the Court is a **Motion to Dismiss (Rec. Doc. 18)** filed by Defendant International Laboratories, LLC ("INL"). Defendant Walmart, Inc. ("Walmart") opposes the motion. (Rec. Doc. 20). The Court notes that though Plaintiff Dawn Brinston did not file a response, the Court considers the merits of the motion in light of Walmart's opposition. The motion, set for submission on August 7, 2019, is before the Court on the briefs without oral argument. Having considered the motion and memoranda of counsel, the opposition, the record, and the applicable law, the Court finds that the motion is **DENIED** for the reasons set forth below.

**I.   Background**

In March of 2017, Plaintiff was prescribed a prescription for Clopidogrel USP 75mg which she then filled at Walmart on the second of every month. (Rec. Doc. 4-1 Petition, ¶ II-III). On January 10, 2018, INL announced a voluntary recall of a batch of Clopidogrel USP 75mg as mislabeled Clopidogrel 75mg or Simvastatin USP 10mg. (*Id.* at V). In February 2018, Plaintiff received letters from United Health Care and Sam's Club Walmart notifying Plaintiff of INL's recall. (*Id*. at VIII). Plaintiff filed suit in the Civil District Court for the Parish of Orleans alleging that the mislabeled prescription medicine caused various serious symptoms including an increased coronary artery blockage. (*Id.* at XIV). Defendant Walmart filed the Notice of Removal on March 7, 2019 in accordance with 28 U.S.C. §1332, diversity jurisdiction. (Rec. Doc. 1, p. 2). By bringing this motion,

Defendant INL requests this Court to dismiss Plaintiff's case pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6).

## II. Legal Standard

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney*, Ltd., 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

## III. Discussion

Defendant INL argues that the Petition lacks a constitutional basis for this Court to exercise personal jurisdiction and fails to state a cognizable claim for which relief can be granted. (Rec. Doc. 18-1, p. 1). INL also asserts that the Petition should be dismissed for improper service. (*Id.*). Walmart opposes dismissal addressing INL's arguments as outlined below.

### A. Rule 12(b)(2)

The Due Process Clause of the Fourteenth Amendment protects liberty interests such that a person will not be subject to a binding judgment of a forum in which he has not established "contacts, ties, or relations." *ITL Intern., Inv. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012)(citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The Due Process Clause requires: (1) minimum contacts by the defendant directed at the forum state, i.e., the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) a nexus between the plaintiff's cause of action and the

defendant's forum-related contacts; and (3) that the exercise of personal jurisdiction be fair and reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Minimum contacts may give rise to either "specific" jurisdiction or "general" jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction exists when a plaintiff's cause of action arises from, or is related to, the nonresident defendant's minimum contacts in the forum state. *Id*. at 414 n. 8, 104 S.Ct. 1868. General jurisdiction exists if the defendant has engaged in "continuous and systematic" activities in the forum state. *Id*. at 415, 104 S.Ct. 1868. In order for a court to exercise general jurisdiction over a foreign corporation, the corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014).

INL argues that this Court should dismiss Plaintiff's claims against INL because this Court lacks both specific and general personal jurisdiction over INL. (Rec. Doc. 18-1, p.1). Because the act of mislabeling Plaintiff's medication and the acts of manufacturing and/or supplying the mislabeled medication occurred outside the forum state of Louisiana, INL argues that this Court lacks specific jurisdiction. (Rec. Doc. 18-1, p. 3). INL also asserts that Plaintiff failed to plead a connection between the alleged wrongful acts and the forum state and she failed to establish that INL purposefully availed itself of the forum. (*Id.*). INL argues that this Court lacks general jurisdiction because INL is not organized under the laws of Louisiana, it does not have a principal place of business in this state, and the Petition lacks allegations that INL has affiliation with Louisiana so continuous and systematic such as to render it essentially at home. (*Id.* at 12).

Walmart responds that INL does in fact have sufficient minimum contacts for this Court to exercise specific personal jurisdiction. (Rec. Doc. 20, p. 2). Walmart argues that Plaintiff established

a *prima facie* case that INL, a foreign limited liability company, mislabeled medication that caused Plaintiff's injuries. (*Id.* at 5). Walmart asserts that by issuing a nationwide voluntary recall, INL knew that the injurious effects of the mislabeled medication could be felt in Louisiana. (*Id.*). Walmart also argues that INL does business with Walmart, a nationwide retailer. (*Id*. at 6).

Pursuant to the "stream of commerce" theory, the Court finds that Plaintiff pled sufficient facts for a *prima facie* case of specific jurisdiction for INL. "In cases involving a product sold or manufactured by a foreign defendant, this Circuit has consistently followed a 'stream-of-commerce' approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court 'finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'" *Ainsworth v. Moffett Engineering, Ltd.,* 716 F.3d 174, 177 (5th Cir. 2011)(quoting *Bearry v. Beech Aircraft Corp*., 818 F.2d 370, 374 (5th Cir.1987)). Pursuant to this test, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce," but "[t]he defendant's contacts must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" *Id.*

The state court Petition pleads that Defendants, including INL, were "engaged in the business of selling and or distributing pharmaceutical medication, manufactured and supplied the mislabeled medication, and placed it into the stream of commerce, in a defective and unreasonably dangerous condition." (Rec. Doc. 4-1, ¶ XII). INL claims that it does not supply, distribute, or sell pharmaceutical medication therefore it did not place the item into the stream of commerce. (Rec. Doc. 18-1, p. 2). INL asserts that it "merely receives an unlabeled medication from a third party, re-packages or re-labels it, and returns the finished product to the third party." (*Id.*) Walmart responds

that INL delivers its products to Walmart distribution centers where the medication is then distributed. (Rec. Doc. 20, p. 6).

Because INL sold the re-packaged medication to Walmart to distribute or resell, the Court finds that INL had an "expectation" that the medication "would be purchased by or used by consumers" anywhere a Walmart store may be found. *Eddy v. Printers House (P) Ltd.,* 627 Fed.Appx. 323, 327 (5th Cir. 2015)(citing *Ainsworth*, 716 F.3d at 177 (quoting *Bearry*, 818 F.2d at 374)). It is well recognized that Walmart sells products as a national distributor and INL did not make an attempt to limit the territory in which Walmart sells its labeled and packaged products. As a packing and labeling company, INL placed into the stream of commerce medication as it is sold. Considering there are several Walmart stores located in Louisiana, Louisiana is a foreseeable forum state. The Court finds that Plaintiff pled sufficient facts for this Court to exercise specific personal jurisdiction over Defendant INL.

INL argues that allowing this Court to exercise specific jurisdiction would offend traditional notions of fair play and substantial justice. (Rec. Doc. 18-1, p. 12). INL notes that the Petition does not have an allegation of the harm suffered in the forum state, and as such Louisiana cannot be said to have any interest in adjudicating the dispute. (Rec. Doc. 18-1, p. 11). The Court finds that exercising personal jurisdiction over INL does not offend traditional notions of fair play and substantial justice.

If the plaintiff makes a *prima facie* case that minimum contacts exist, the defendant has the burden of making a "compelling case" that the exercise of jurisdiction would be unfair so as to offend traditional notions of fair play and substantial justice. *Id.* With regard to Defendant's burden of showing that jurisdiction over it would be unfair, a court may consider the following factors:

> (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

INL is correct in asserting that the Petition does not plead where Plaintiff filled her prescription and subsequently consumed the medication. Nevertheless, the Petition does plead that Plaintiff is an Orleans Parish resident who filled her prescription at a Walmart store once a month for twelve refills. (Rec. Doc. 4-1, p. 1). The Court must accept all factual allegations in the Petition as true and draw all reasonable inferences in Plaintiff's favor. Absent contrary evidence, the Court draws the reasonable inference in Plaintiff's favor that she filled her prescription in her state of residence, Louisiana. The Court finds that Defendant INL does not provide a compelling case that the exercise of jurisdiction would be unfair so as to offend traditional notions of fair play and substantial justice.

**B. Rule 12(b)(6)**

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id*. (quoting *Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id*. (quoting *Plotkin v. IP Axess, Inc*., 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id*. (quoting *Iqbal*, 129 S. Ct. at 1950).

INL argues that the Petition lumps together Defendants and provides collective blanket allegations. (Rec. Doc. 18-1, p. 15). INL also asserts that Plaintiff does not plead that she received a

mislabeled prescription from INL and as a result ingested the wrong medication. (*Id.* at 16). INL states that the receipt of the recall notice does not give rise to a reasonable inference that she received the mislabeled medications. (*Id.* at 18). INL claims that Louisiana law does not have a legal theory under which Plaintiff may obtain relief. (*Id.*). Lastly, INL argues that Plaintiff cannot assert any claims outside of the Louisiana Products Liability Act ("LPLA"), and that the Food, Drug, and Cosmetic Act ("FDCA") preempts the LPLA. (*Id.* at 19). Walmart responds that Plaintiff did state a valid claim under the LPLA and preemption under the FDCA does not apply. (Rec. Doc. 20, p. 9-12).

The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La.Rev.Stat.Ann. § 9:2800.52. A plaintiff may not recover from a manufacturer for damages incurred by the use of a product based on any liability theory not set forth in the LPLA. *Id.* A plaintiff shall prove the following elements to establish a products liability cause of action under the LPLA: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. *Jefferson v. Lead Industries Associations, Inc*., 106 F.3d 1245, 1251 (5th Cir.1997); La.Rev.Stat.Ann. § 9:2800.54. A claimant may prove that the product was "unreasonably dangerous" only if it was unreasonably dangerous: (1) in construction or composition; (2) in design; (3) because of inadequate warning; or (4) because of nonconformity to an express warranty. *Id*. at § 2800.54(B)(1–4). In order for a product to be unreasonably dangerous in construction or composition, the Plaintiff must prove that "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La.Rev.Stat.Ann. § 9:2800.55.

Plaintiff specifically pleads that as a manufacturer, INL sent a voluntary notice to recall a batch of medication due to mislabeling. (Rec. Doc. 4-1, ¶ V). Plaintiff argues in the Petition that the mislabeled lot of medication was a direct and proximate cause of her injuries. (*Id.* at XVI). The Petition provides that the mislabeled medication was defective and unreasonably dangerous. (*Id.* at XI). It is axiomatic that a mislabeled bottle or package deviates from otherwise identical products manufactured by INL, and the performance standard is to properly label bottles to reflect the correct medication contained therein. The Court finds Plaintiff pled sufficient facts to assert that the mislabeled medication is a deviation from the performance standard or that it is a deviation from otherwise identical products manufactured by the same manufacturer. The Petition also states that Plaintiff is a member of the class of persons reasonably anticipated to use the product because she was prescribed the medication which INL mislabeled. (*Id.* at XI). The Court holds that Plaintiff sufficiently plead facts to state a plausible claim for a defect in the medication's construction or composition under the LPLA.

As cited by INL, the Fifth Circuit confirmed that federal law preempts LPLA claims based upon failure to warn, design defect, and breach of express warranty against a drug manufacturer. *See Johnson v. Teva Pharmaceuticals USA, Inc.,* 758 F.3d 605 (5th Cir. 2014). Nowhere is it found in the case law that federal law preempts LPLA claims based upon a defect in the product's construction or composition. Considering the Court finds that the Petition states a plausible claim based upon a construction or composition defect, the Court finds that the FDCA preemption does not apply to Plaintiff's claims.

## C. Rule 12(b)(5)

A Rule 12(b)(5) motion to dismiss calls into question the sufficiency of service of process. Once service of process has been challenged as insufficient, the "plaintiff bears the burden of establishing its validity." *Carimi v. Royal Carribean Cruise Line, Inc*., 959 F.2d 1344, 1346 (5th Cir.

1992). A district court has broad discretion to dismiss an action for insufficient service of process under Rule 12(b)(5). *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994).

INL argues that Plaintiff's service of process was legally insufficient under Federal Rule of Civil Procedure 4 because she failed to comply with Louisiana and Florida service of process laws. (Rec. Doc. 18-1, p. 21). INL cites Louisiana Code of Civil Procedure Article 1266(A) to assert that Plaintiff's claims should be dismissed for her failure to personally serve INL's registered agent in Florida. (*Id.* at 22). Walmart counters that if the Court finds service is improper, it should grant Plaintiff additional time to properly serve INL considering the case has been removed to this Court. (Rec. Doc. 20, p. 12). Walmart urges the Court to use its discretion granted in Rule 4(m) even if Plaintiff lacks good cause. (*Id.* at 13).

Pursuant to Rule 4, service on a business entity is proper in accordance with the law of the state where the district court is located. F.R.C.P. 4(h)(1)(A). The Louisiana Code of Civil Procedure provides, "Service of citation or other process on a domestic or foreign limited liability company is made by personal service on any one of its agents for service of process." La. C.C.P. Art. 1266(A). On June 19, 2019, Plaintiff filed an Affidavit of Service in response to the Court's Show Cause Order. (Rec. Doc. 8-1). Counsel for Plaintiff averred:

> [S]he served certified copies of the Citation and Petition for Damages in this action under the Louisiana Long Arm Statute, R.S. 13:3201, Pursuant to Section 3204 of Title 13, by mailing them to the defendant, International Laboratories, LLC, by certified mail, return receipt requested, properly addressed and postage prepaid *through their agent for service of process, CT Corporation System*; that on or about February 8, 2019, the Citation and Petition for Damages were *received by defendant's agent* as evidenced by the attached certified mail return receipt and forwarded to defendant by the agent per the attached CT Corporation Service of Process Transmittal.

(*Id.*)(emphasis added). The Court notes that the Louisiana long-arm statute cited in counsel's affidavit is the exception to the general rule of Article 1266; nevertheless, Plaintiff complied with the requirements set forth in the general rule. As averred by counsel, she made personal service on

INL's agent for service of process. The Court finds that service upon INL is proper and denies the motion to dismiss.

**IV.     Conclusion**

Accordingly;

IT IS ORDERED that the **Motion to Dismiss (Rec. Doc. 18)** is **DENIED**.

New Orleans, Louisiana, this 27th day of August, 2019

                                               JUDGE JAY C. ZAINEY
                                           UNITED STATES DISTRICT JUDGE